[Civ. No. 68405. Second Dist., Div. Three. Dec. 1, 1983.]

KENNETH D. SMITH, Plaintiff and Respondent, v.
HAROLD R. SILVEY, JR., Defendant and Appellant.

401

_____

## COUNSEL

Harold R. Silvey, Jr., in pro. per., for Defendant and Appellant.

J. George Gold and Mitchell M. Gold for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Defendant and appellant Harold R. Silvey (Silvey) appeals the granting of an injunction pursuant to Code of Civil Procedure section 527.6 (section 527.6)[1] restraining him from initiating complaints with public agencies against plaintiff and respondent Kenneth D. Smith (Smith) in relation to Smith's Paradise Ranch Mobile Home Park (Park), and from contacting any of the residents of the Park.

---

[1]Section 527.6 enacted in 1978 provides that: "(a) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order, and an injunction prohibiting harassment as provided in this section. [¶] (b) For the purposes of this section, 'harassment' is a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys or harasses such person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff. 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. *Constitutionally protected activity is not included within the meaning of 'course of conduct.'* [¶] (c) Upon filing a petition for an injunction under this section, the plaintiff may obtain a temporary restraining order in accordance with the provisions of subdivision (a) of Section 527 of the Code of Civil Procedure. A temporary restraining order may be granted with or without notice upon an affidavit which, to the satisfaction of the court, shows reasonable proof of harassment of the plaintiff by the defendant, and that great or irreparable harm would result to the plaintiff. A temporary restraining order granted under this section shall remain in effect, at the court's discretion, for a period not to exceed 15 days, unless otherwise modified or terminated by the court. [¶] (d) Within 15 days of the filing of the petition, a hearing shall be held on the petition for the injunction. The defendant may file a response which explains, excuses, justifies or denies the alleged harassment. At the hearing, the judge shall receive such testimony as is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting such harassment. An injunction issued pursuant to this section shall have a duration of not more than three years. At any time within the three months before the expiration of the injunction, the plaintiff may apply for a renewal of the injunction by filing a new petition for an injunction under this section." (Italics added.)

Because the anticipated course of conduct enjoined herein amounts to constitutionally protected activity, which activity is specifically excluded from the application of the statute by its language, the injunction is dissolved.

PROCEDURAL AND FACTUAL BACKGROUND[2]

Silvey moved into Smith's Park in 1971, and apparently they were on good terms for some time thereafter. In 1974, Silvey became dissatisfied with Smith's operation of the Park and began to oppose him openly.

Prior to his moving out of the Park in 1976, Silvey carried on a correspondence with the Alcoholic Beverage Control Board concerning alleged noncompliance with liquor laws. This probably led to a raid on the Park's Halloween party October 25, 1975, which resulted in the citation of one of the Park's residents.

In 1975, Silvey's agitation concerning water quality in the Park also apparently led to the filing of a criminal action to enforce certain regulations concerning water quality and to cause modification of a well Smith dug on the property.

Silvey did not return to the Park to live after his departure in 1976, but from August 1977 to January 1980 he conducted a complaint campaign with various governmental agencies he thought to be responsible for the regulation of the Park, writing numerous letters, making phone calls and meeting personally with officials.

On June 21, 1978, Silvey initiated a meeting of various governmental agencies, the object being to force reinspection of various Park improvements, including plumbing and electrical work. He was informed that the work had been inspected and met the requirements of state law. Nonetheless, after that meeting, Silvey continued to press for reinspection and eventually filed a mandamus action against the Los Angeles County Board of Supervisors. The claim was denied for lack of standing but Silvey appealed this judgment, later stipulating to dismissal of the appeal because hearings had been scheduled for conditional use permits and variances on the Park.

Finally, on December 2, 1981, Smith filed a "Petition for Injunction Prohibiting Harassment" and "Application for Temporary Restraining Order" pursuant to section 527.6. In support of the required representation that he would suffer "great and irreparable injury," Smith alleged that:

---

[2]The factual picture was gleaned from the various pleadings filed in the litigation.

"[Silvey] will continue to harass and cause [Smith] physical and emotional distress by persistent and continuous phone calls, letters and personal visits to employees and officials of various public agencies of this county and state and by lies, half-truths, deliberate misstatement of facts and threats of action against such officials and agencies and thereby attempt to initiate and encourage administrative action contrary to [Smith's] interests and civil and criminal prosecution against [Smith] without proper basis and intended to do so with respect to a hearing on December 8, 1981 at [Smith's] Mobile Home Park, which has been scheduled by the State Department of Health Services re a pending application for a water supply permit for said Mobile Home Park, seriously affecting the 150 occupants thereof as well as [Smith's] entire enterprise developed by personal effort and all of [Smith's] capital over a period of twelve years."

On January 4, 1982, Smith agreed to submit the matter on declarations. Silvey made a statement, answered the trial court's questions and also agreed to submit. Thereafter, the trial court made the following order:[3] "[Silvey] is restrained from directly or indirectly initiating complaints by phone, in writing, or personally appearing at any agency with authority to grant or revoke, or approve or disapproves [sic] of permits of construction, operations, or the licensing of the activities of [Smith] in relation [sic] the Paradise Ranch Mobile Home Park. [Silvey] is specifically authorized to appear at any public hearing conducted by any such agency for presenting either written or documentary evidence or making written or oral arguments. The court further orders that [Silvey] [sic] restrained from contacting any of the residents of mobile home park. A $250.00 bond having been posted, the court grants said restraining order for a period of 3 years from this date."

Silvey filed a timely notice of appeal.

## CONTENTIONS

Silvey contends the trial court erred in granting the injunction for several reasons, but primarily, that its terms violated his constitutional right of free speech and right to petition for redress of grievances.

## DISCUSSION

### 1. *Legislative intendments.*

This appears to be a case of first impression in that no appellate court has been called upon to interpret section 527.6 in any given fact situation. We question the section's applicability to the one before us.

---

[3]This order was pursuant to the format of a form marital dissolution restraining order rather than the Judicial Council form approved for section 527.6 injunctions, "CCP 527.6 [B 9823]."

Perusal of the limited available legislative history in an effort to accord the statute its intended meaning sheds some light. An analysis prepared for the Senate Committee on Judiciary (1977-1978 Reg. Sess.—Assem. Bill No. 3093) saw the purpose as follows: "Under existing law, a victim of harassment may bring a tort action based either on invasion of privacy or on intentional infliction of emotional distress. Where great or irreparable injury is threatened, such victim may obtain an injunction under procedures detailed in C.C.P. Sec. 527(a). [¶] This bill would establish an expedited procedure for enjoining acts of 'harassment,' as defined, including the use of temporary restraining orders. The bill would make it a misdemeanor to violate the injunction and would provide for the transmittal of information on the TRO or injunction to law enforcement agencies. [¶] The purpose of the bill is to provide quick relief to harassed persons."

The analysis observed that "constitutionally protected activity" would be specifically excluded from the definition of "course of conduct." An example of the type of activity that was to be covered related to the plight of a Sacramento student and was set forth for the committee: " 'He followed her day after day, she remembers. He pressed his face against the windows of her classrooms and peered at her around bookstacks in the library. He swathed her car in red and white camellia blossoms. He called her 40 times a weekend and sent her gifts such as his sterling-silver baby cup . . . When she fled to her parents' home 150 miles away, he would park nearby for hours . . . (He) bombarded her, she says, with clippings on parapsychology, letters he had written to President Ford and gifts, including a rock shaped like a phallus.' " (*Ibid.*)

The bill analysis to the Assembly Committee on Judiciary disclosed an amendment dated May 2, 1978, wherein "constitutionally protected *speech*" was modified to substitute the word "activity," indicating an intended broader scope of excluded conduct.[4]

---

[4]The official form for a section 527.6 injunction, promulgated by the Judicial Council, also indicates the extreme degree of harassment required by the statute before an injunction is allowed. The form lists the following prohibited activities, and provides boxes to check them off: "3. It Is HEREBY ORDERED THAT (Name) . . . is prohibited from alarming, annoying, or harassing (Name) . . . and Defendant is specifically ordered to: [¶] a. Refrain from threatening, striking or making physical contact with Plaintiff. [¶] b. Remain at least . . . yards away from the following locations . . . [¶] c. Refrain from keeping Plaintiff under surveillance. [¶] d. Refrain from following Plaintiff. [¶] e. Remain at least . . . yards from the following persons (Specify). [¶] f. Refrain from contacting Plaintiff by telephone. [¶] g. Refrain from blocking Plaintiff's movements in public places or thoroughfares." (Form B9823.)

The form also provides a space for any other miscellaneous order. In contrast, the marital dissolution form used in the instant case, while also providing a space for miscellaneous orders to disagreeing spouses, provides in form language in one place that the individual sought to be enjoined is "restrained and enjoined from annoying, molesting or harassing the

## 2. *Activities enjoined are constitutionally protected.*

■ Our fact situation is far removed from the example cited, involving as it does Silvey's complaints to governmental agencies and his contacts with Park residents. Silvey alleged that by curtailing these activities, the injunction infringes on both his right to free speech and his right to petition for redress of grievances.

■ These rights are "fundamental" under the First Amendment of the United States Constitution and the Constitution of the State of California. (Art. I, §§ 2, 3.) ■ In California, the right to petition for redress of grievances protects attempts to obtain redress through all three branches of government. (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 533-534, fn. 4 [183 Cal.Rptr. 86, 645 P.2d 137], vacated and remanded on issue of independent state grounds in 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], and affirmed on state constitutional grounds in (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072].)

■ Silvey's past conduct has consisted of admittedly persistent attempts to bring alleged facts about Smith's mobile home Park to the attention of various governmental agencies. Smith's petition placed in issue Silvey's motives. The California Supreme Court in *City of Long Beach* v. *Bozek, supra,* 31 Cal.3d at pages 532-533 indicated that a proper motive in bringing such action is irrelevant. As exasperating as Silvey's conduct must have been to Smith, Silvey was constitutionally protected in exercising his right of petition to administrative agencies, or the executive branch of government, irrespective of the considerations that prompted his actions. His filing of the mandamus action against the board of supervisors was likewise an exercise of this same right to petition the judicial branch of the government. Such activity cannot be classified as a harassing "course of conduct" within the definition of section 527.6, subdivision (b).

We in no way mean to imply that Silvey necessarily has standing to bring enforcement actions through these agencies. The sole issue here dealt with is whether he can be enjoined from *contacting* these agencies under the authority of section 527.6.

The second portion of the trial court's order prohibiting Silvey from "contacting" any of the residents of the mobilehome Park is also infirm as

---

other, *directly or indirectly* in person, by mail or by telephone, at either of their respective residences, places of employment or any other public place." (Form 76 M424A-12/77; italics added.)

The use by the trial court of such a form in lieu of the appropriate form section 527.6 (B9823) may have contributed to the inappropriate order given in the instant case, despite concern and efforts by the trial court to tailor the injunction to avoid constitutional problems.

unconstitutionally overbroad, because its vague wording appears to prohibit lawful as well as unlawful activity. That is, it could be interpreted to prohibit not only physically or verbally threatening "contact," but also constitutionally protected speech. (See *In re Berry* (1968) 68 Cal.2d 137, 155 [65 Cal.Rptr. 273, 437 P.2d 273]; *California Retail Liquor Dealers Institute* v. *United Farm Workers* (1976) 57 Cal.App.3d 606, 610 [129 Cal.Rptr. 407], citing *United Farm Workers Organizing Committee* v. *Superior Court* (1971) 4 Cal.3d 556, 570 [94 Cal.Rptr. 263, 483 P.2d 1215].)

Silvey's right to "contact" the residents of the Park through the medium of printed literature or even personal visits is a constitutionally protected right of expression in the absence of protest by the recipients. ■ The burden of restricting the "house-to-house distribution of ideas" falls on the homeowner; that is, no governmentally imposed restriction should occur until after the caller has been warned by the householder that the latter does not want to be disturbed. (*Van Nuys Pub. Co.* v. *City of Thousand Oaks* (1971) 5 Cal.3d 817, 826 [97 Cal.Rptr. 777, 489 P.2d 809], cert. den. (1972) 405 U.S. 1042 [31 L.Ed.2d 583, 92 S.Ct. 1317]; *Alternatives for California Women, Inc.* v. *County of Contra Costa* (1983) 145 Cal.App.3d 436, 451 [193 Cal.Rptr. 384].)

■ Furthermore, in the record before us, there is evidence of an "open letter" from Silvey to the Park residents dated November 20, 1981, but there is nothing to indicate any protest by the Park residents as to contacts with Silvey after he moved out, nor indeed evidence of any recent contacts at all. Such a showing is insufficient to warrant an injunction under section 527.6.

### 3. *Traditional balancing of constitutional interests preserved.*

Our holding is in keeping with the required balancing of First Amendment rights and governmental interests where regulations impair constitutionally protected activity. (See *L. A. Teachers Union* v. *L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827].) We sympathize with Smith's anger and frustration at Silvey's persistence in making his views known far and wide. However, Silvey's activity and the likelihood of its continuance, as presented to us in this record, simply do not constitute a "clear and present danger" sufficient to merit this broad an injunction. Silvey's activities do not constitute a "serious substantive evil" to a right or interest having equal dignity and protection with First Amendment liberties. (13 Cal.Jur.3d, Constitutional Law, § 258, pp. 481-482; see *Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 542-543 [171 P.2d 885], *In re Porterfield* (1946) 28 Cal.2d 91, 103 [168 P.2d 706, 167 A.L.R. 675].)

On the basis of the record before us we cannot allow such a broadly prohibitive injunction to stand.

## DISPOSITION

The injunction granted by the lower court is hereby dissolved. Judgment is reversed.

Lui, J., and Danielson, J., concurred.