Filed 3/14/13  In re N.V. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re N.V., a Person Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | C071788 |
| Plaintiff and Respondent, | (Super. Ct. No. J05419) |
| v. | |
| M.V., | |
| Defendant and Appellant. | |

Mario V., found to be the alleged father of minor Nadine V. (minor), appeals from the juvenile court's order terminating his parental rights. (Welf. & Inst. Code,[1] § 366.26.) He first contends that the juvenile court violated his right to due process by failing to designate him a presumed father. He further contends that section 366.26, subdivision (c)(2)(A) precluded termination of his parental rights because "reasonable

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

reunification services" were not provided to him.  As we explain, because his claims are either forfeited or lack merit or both, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

San Joaquin County Human Services Agency (the Agency) filed a section 300 petition as to minor, then a newborn, on April 19, 2010.  The petition named mother[2] and Mario as minor's parents and alleged that they lived on Aurora Street in Stockton.  The petition alleged that minor and mother had tested positive for methamphetamine at minor's birth in April 2010.  Minor showed symptoms of drug exposure.  Mother admitted using methamphetamine while pregnant up to nearly the time of minor's birth, in the company of Mario, and that she knew it would place minor at risk.  She did not obtain prenatal care.  Her other children had been in the care of their maternal grandmother for the past year, and neither mother nor Mario had cared for or supported them.  Mother and Mario had criminal records and a history of domestic violence.  Mario's whereabouts were unknown.

The detention/jurisdiction report indicated that mother reported Mario had been incarcerated for a week and was also currently on parole.  The social worker urged mother to notify him of the impending detention hearing.

Mario did not appear at the detention hearing held on April 20, 2010.  Mother told the court that Mario was minor's father, was at the hospital when minor was born, and signed a voluntary declaration of paternity (VDOP), but she did not know where he was at the time of the hearing.  The court found that notice had been given as required by law and designated Mario as minor's alleged father.

Mario did not appear at the jurisdiction hearing, held on May 4, 2010.  The juvenile court found the allegations of the section 300 petition true as to Mario in his

---

[2] Mother is not a party to this appeal.

2

absence. Although the proof of service in the record shows service by certified mail to Mario at the Aurora Street address, county counsel indicted she had not received confirmation of receipt. The court summarily found that notice had been given as required.

Mario did not appear at the next hearing, held on May 11, 2010. County counsel represented to the juvenile court that an absent parent locator had revealed a different address for Mario, on Willow Street in Stockton, and he had been served there. The proof of service shows service to the Willow Street address by first-class mail. The court found that notice had been given and reaffirmed its prior jurisdictional findings as to Mario.

On May 13, 2010, the juvenile court asked the San Joaquin County Department of Child Support Services (DCSS) whether minor's paternity had been declared. DCSS replied that it had no record of a declaration of paternity.

The disposition report confirmed that the Agency was not in contact with Mario-- he had not responded to any correspondence, he had not attended any court hearings, and he had neither visited nor inquired about minor. The report noted that the superior court had revoked Mario's probation on April 27, 2010, and issued a bench warrant for his arrest on April 28, 2010, for failure to attend drug court. The Agency recommended that the juvenile court not offer services to Mario pursuant to section 361.5, subdivision (b)(1) (whereabouts unknown), but noted that if he established paternity at some later date, he could receive services.

The Agency sent notice of the dispositional hearing to Mario by first-class mail at both the Aurora Street address and the Willow Street address. He did not appear at the hearing, held on June 15, 2010, and the juvenile court ordered minor placed in foster care and reunification services to mother. The court denied services to Mario under section 361.5, subdivision (b)(1).

3

The six-month status review report, filed November 8, 2010, stated that the Agency had had no contact with Mario during the reporting period and his current circumstances were unknown. The Agency recommended terminating mother's reunification services and selecting a permanent plan of adoption for minor.

The Agency sent notice of the upcoming hearing to Mario by first-class mail at the Aurora Street address. Mario did not attend the status hearing, held on January 21, 2011. The juvenile court terminated mother's services and set a section 366.26 hearing and a status review.

The status review report filed May 9, 2011, recommended adoption as the permanent plan. The section 366.26 report, filed May 11, 2011, recommended the termination of mother's and Mario's parental rights.

On August 17, 2011, the juvenile court continued the section 366.26 hearing to November 2, 2011. On September 29, 2011, the Agency filed proof of service of the upcoming hearing on Mario, who was apparently in custody at Deuel Vocational Institute (DVI).[3] He signed a request to be transported from custody to the hearing and to receive appointed counsel; his request was filed on September 15, 2011.

On September 21, 2011, the Agency applied ex parte for an order to change minor's last name to match that shown on her birth certificate, a certified copy of which was attached to the application. The birth certificate shows Mario's name as the father. On November 2, 2011, the juvenile court appointed counsel for Mario, scheduled a consolidated section 300 hearing (as to him) and section 366.26 hearing on December 7, 2011, and ordered his appearance at the hearing. On that date, the hearing was apparently continued to January 4, 2012.

---

[3] The record provided to us does not reveal how and when the Agency (or court) discovered Mario's incarceration at DVI, nor does it reveal his incarceration dates.

4

On December 29, 2011, Mario's counsel filed a pleading captioned "Notice of Motion to Return Case to Dispositional Hearing -- Defective Notice."  The motion asserted:  (1) the Agency failed to give Mario the required notice of prior proceedings because its notice was either nonexistent or untimely, and (2) the Agency had not undertaken a diligent search to locate Mario.  The motion did not attach a declaration from Mario or counsel.

On January 12, 2012, the Agency filed a response to Mario's motion, arguing:  (1) the Agency made a good faith effort to locate Mario and provide him with notice, (2) Mario had produced no evidence that he did *not* receive actual notice of the proceedings, and (3) it would not be in minor's best interest to return the case to the dispositional stage.

On January 25, 2012, the juvenile court summarily denied Mario's motion to reopen the disposition, after finding in part that:  "[F]rom everything I see here, [Mario] at least knew there was a case going on.  Never made any attempt to come to court.  And he knew."  On August 8, 2012, the juvenile court denied Mario's attempt to "renew" his motion and terminated his parental rights.

## DISCUSSION

### I

### *Claim of Presumed Fatherhood*

Mario first contends that the juvenile court deprived him of due process by failing to designate him as a presumed father.

#### A.    *Forfeiture*

Although Mario raised the claim of deprivation of due process in the juvenile court, in doing so he relied *exclusively* on his argument that he did not receive sufficient notice of ongoing proceedings.  On appeal, he argues for the first time that the juvenile court erred when it failed to designate him a presumed father--a request that he never made to the juvenile court.

5

"'It is a general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived.'" (*Hershey v. Reclamation Dist. No. 108* (1927) 200 Cal. 550, 564.)   This general rule applies in dependency cases.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  As we explained in a criminal case:  "[I]t is generally true that 'constitutional objections must be interposed before the trial judge in order to preserve such contentions for appeal.'  [Citation.]  Even a claim that the defendant's due process right to notice was violated may be waived by the failure to assert the claim in the trial court.  [Citation.]  The purpose of the waiver doctrine is to encourage a defendant to bring any errors to the trial court's attention so the court may correct or avoid the errors and provide the defendant with a fair trial."  (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060.)

Here, Mario raised a due process claim regarding lack of *notice* in the juvenile court, but at no point did he raise a due process claim about presumed fatherhood. Raising *one* constitutional claim does not preserve *other* constitutional claims.  (Cf. *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 50 ["We are unaware of any doctrine which insulates a statute from one constitutional attack, simply because it has survived a different constitutional attack"].)  By failing to raise his presumed fatherhood challenge in the juvenile court, Mario has failed to preserve the point for appeal.  Because the parties' briefing does not address forfeiture, we reach the merits of Mario's claim *post*.[4]

---

[4] We note with disapproval that the Agency (through County Counsel) also fails to respond to Mario's primary contention on appeal--that he established presumed fatherhood status through completion of a VDOP.

*B.      Standard of Review*

The Agency asserts that we should apply the substantial evidence standard.  Mario does not delineate the applicable standard of review in his opening brief, but asserts in his reply brief that we should review for plain error.

We deem Mario's argument for plain error review forfeited because it was raised for the first time in Mario's reply brief without any showing why it could not have been raised sooner.  (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.)   In any event, Mario cites no authority for his argument.[5]

As Mario argues in effect that insufficient evidence supports his designation by the juvenile court as no more than an alleged father, we review for substantial evidence.  (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 227-228 [applying substantial evidence standard to claim of insufficient evidence supporting court's finding that beneficial parental relationship exception did not apply].)

*C.      The Law*

" 'Dependency law recognizes three types of fathers:  presumed, alleged and biological.' [Citation.]  A biological father is one whose paternity of the child has been established, but who has not established that he qualifies as the child's presumed father under Family Code section 7611.  [Citation.]  ' "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an " 'alleged' " father." ' [Citation.]" (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.)

" 'A father's status is significant in dependency cases because it determines the extent to which the father may participate in the proceedings and the rights to which he is entitled. [Citation.]  . . . Presumed father status entitles the father to appointed counsel,

---

[5]  The only case he cites in this context actually applies the substantial evidence standard. (*In re Joanna Y.* (1992) 8 Cal.App.4th 433, 439.)

custody (absent a finding of detriment), and a reunification plan. [Citations.]' [Citation.] The court *may* provide reunification services to a biological father, if it determines that the provision of services will benefit the child. (§ 361.5, subd. (a).) Due process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status, in accordance with procedures set out in section 316.2. [Citation.] He is not entitled to appointed counsel or to reunification services. [Citation.]" (*In re Kobe A., supra*, 146 Cal.App.4th at p. 1120.)

Section 7611 sets forth the bulk of the requirements for presumed fatherhood of a minor child, all of which require either marriage of the parents, their attempted marriage, or involvement and support by the father. These provisions do not aid Mario. The record is devoid of evidence that Mario and mother had ever married or attempted to marry, nor do we see *any* evidence that Mario was involved in minor's life or provided her with support, financial or otherwise (see section 7611, subdivision (d)). Without such evidence, the fact that Mario is named as minor's father on minor's birth certificate is insufficient to establish presumed fatherhood pursuant to section 7611.

Mario asserts he is entitled to presumed father status based on the voluntary declaration of paternity that mother told the juvenile court he had signed, pursuant to section 7570 et seq. Section 7571, subdivision (a), provides: "[U]pon the event of a live birth, prior to an unmarried mother leaving any hospital, the person responsible for registering live births under Section 102405 of the Health and Safety Code shall provide to the natural mother and shall attempt to provide, at the place of birth, to the man identified by the natural mother as the natural father, a [VDOP] . . . [6] Staff in the

---

**6** Health and Safety Code section 102405, subdivision (a)(4), provides in part: "If the parents are not married to each other, the father's name shall not be listed on the birth certificate unless the father and the mother sign a [VDOP] at the hospital before the birth certificate is prepared. The birth certificate may be amended to add the father's name at a

hospital shall witness the signatures of parents signing a [VDOP] and shall forward the signed declaration to the [DCSS] within 20 days of the date the declaration was signed. A copy of the declaration shall be made available to each of the attesting parents."

Section 7573 provides in part: "[A] completed [VDOP] . . . that has been filed with the [DCSS] shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction."

A VDOP executed and filed in compliance with the requirements of section 7570 et seq. entitles the father to presumed father status in dependency proceedings. (*In re Liam L.* (2000) 84 Cal.App.4th 739, 747; accord, *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1163, fn. 2; *In re Christopher M.* (2003) 113 Cal.App.4th 155, 161; see also Cal. Rules of Court, rule 5.635(c).)

D.      *Analysis*

Here, the record does not conclusively show that Mario (or anyone for that matter) completed a VDOP as to minor. The *only* evidence that Mario executed a VDOP is mother's unsworn statement at the detention hearing and potentially Mario's name on minor's birth certificate. This scant evidence triggered the juvenile court's duty of inquiry, which it properly performed by inquiring of DCSS as to whether a VDOP had been filed. (§ 316.2, subd. (a)(5).) In response to the court's timely inquiry, DCSS notified the court that *no voluntary declaration of paternity had been filed.* After receiving DCSS's negative response, absent further evidence of the VDOP's completion, the juvenile court could properly conclude that Mario never executed a VDOP regardless of the fact that his name appeared on the birth certificate. (See *In re D.A.* (2012) 204 Cal.App.4th 811, 826-827 [where no VDOP, no averral by father that he executed VDOP, and no evidence the hospital staff knew parents not married, no error in failing to

later date only if paternity for the child has been established by a judgment of a court of competent jurisdiction or by the filing of a [VDOP]."

apply presumption despite father's name on birth certificate].)  Thus, substantial evidence supports the court's finding that Mario was not entitled to presumed fatherhood under Family Code section 7570 et seq.[7]

## II

### *Sufficiency of Notice*

Father makes an undeveloped argument that he was afforded insufficient notice of the dependency proceedings under a subheading to his due process argument, captioned: "C.  The Court's Disposition Findings were made only as to mother."  To the extent that Mario intends to argue on appeal, as he did to the juvenile court, that he was deprived of due process due to inadequate notice of the dependency proceedings, the argument is procedurally barred due to his failure to properly head his claim and provide coherent supporting argument and authority.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see Cal. Rules of Court, rule 8.204(a)(1)(B).)

Further, due to Mario's failure to head and coherently argue the claim of insufficient notice that he raised in the trial court here on appeal, we deem his claim of

---

[7] *In re Raphael P.* (2002) 97 Cal.App.4th 716, cited by Mario is distinguishable from this case.  There, father's name was on the birth certificate and he submitted a declaration averring that he had signed the VDOP at the hospital.  (*In re Raphael P., supra*, 87 Cal.App.4th at pp. 737.)   The juvenile court failed to make the appropriate inquiry as to whether a VDOP had been executed and filed. (*In re Raphael P., supra*, at p. 739, f n. 15.)  Here, the juvenile court properly made the inquiry and the resulting response squarely rebutted any presumption that arose from the presence of Mario's name on the birth certificate.

deprivation of due process through inadequate notice to be abandoned. (See *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 710-711).[8]

## III

### *Reasonable Services*

Mario finally contends that his parental rights could not be terminated because he never received reasonable reunification services (cf. § 366.26, subd. (c)(2)(A); Cal. Rules of Court, rule 5.725(e)) and because services were denied to him due only to the fact that his whereabouts were unknown, a fact that does not justify the termination of services and the setting of a section 366.26 hearing to consider adoption. (§ 361.5, subd. (b)(1); *In re T.M.* (2009) 175 Cal.App.4th 1166, 1174.)

Only a presumed father is entitled to reunification services. (§ 316.5, subd. (a); *In re Kobe A., supra,* 146 Cal.App.4th at p. 1120.) As we have explained at length *ante*, Mario was not a presumed father. Thus any alleged deficiency in the provision of services or denial of services is completely irrelevant to our analysis of error.

---

[8] Notice by certified mail, return receipt *requested*, appears to be sufficient for jurisdictional hearing purposes, see section 291, subdivision (e)(1); here the record shows Mario was afforded the minimum notice required. (See *In re J.H.* (2007) 158 Cal.App.4th 174, 183-184 [no requirement of signed return receipt under section 291, subdivision (e)(1)].) Even if notice were deficient, Mario would was unable to establish presumptive parenthood on even the most generous read of this record, for reasons we have explained *ante*. Thus, any error in notice to Mario was harmless beyond a reasonable doubt. (*In re J.H, supra,* 158 Cal.App.4th at pp. 183-185 [notice errors subject to harmless beyond reasonable doubt standard].)

## DISPOSITION

The order of the juvenile court is affirmed.


                                        DUARTE                    , J.



We concur:



          ROBIE                    , Acting P. J.



          MURRAY                    , J.