Filed 6/25/25  Sameer v. Moreno CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MADHU SAMEER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HECTOR MORENO et al.,<br><br>    Defendants and Respondents. | F083066<br><br>(Super. Ct. No. 15CECG00351)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Kimberly Gaab, Judge.

Madhu Sameer, in pro. per., for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney, James A. Murphy and Geoffrey T. MacBride for Defendants and Respondents.

-ooOoo-

Plaintiff Madhu Sameer appeals from the dismissal of her lawsuit against her former attorneys.  The trial court entered a dismissal after Madhu failed to post security in accordance with its order finding her to be a vexatious litigant.  (See Code Civ. Proc.,

§§ 391-391.7.)**1** We conclude (1) substantial evidence supported the trial court's findings, (2) the trial court correctly applied the provisions of the vexatious litigant statute to its factual findings (i.e., the court did not commit an error of law), and (3) the court did not otherwise abuse its discretion. Alternatively, we have conducted an independent review of the relevant record and determined Madhu meets the definition of a vexatious litigant contained in section 391, subdivision (b)(1)(i).

We therefore affirm the dismissal of the lawsuit.

## BACKGROUND

Because our opinion is unpublished and the parties are familiar with the legal issues presented and the factual and procedural history of this and Madhu's other cases, our description is limited to the events and proceedings necessary to inform the parties of the reasons for our decision. (See Cal. Const., art. VI, § 14 [appellate decisions "shall be in writing with reasons stated"]; *People v. Garcia* (2002) 97 Cal.App.4th 847, 850–855 [use of memorandum opinions].)

Defendants Hector Moreno, Connie Smith, Rory Coetzee, Andrew Westover, Kayleigh Walsh, Raechelle Verde, and the Law Firm of J. Hector Moreno, Jr. & Associates (collectively, Moreno) represented Madhu in a marriage dissolution proceeding in Santa Clara County Superior Court, case No. FL116302, and in a child support action in Fresno County Superior Court, case No. 05CEFS02946. In June 2014, Madhu sued Moreno for malpractice in Santa Clara County Superior Court, case No. 114-CV-266152. In February 2015, Madhu filed this action against Moreno and others in Fresno County Superior Court. Moreno contends Madhu's Fresno action raised the same

---

**1**     Undesignated statutory references are to the Code of Civil Procedure. To avoid confusion and provide some continuity in terminology, this opinion, like earlier opinions, refers to plaintiff by her first name because her surname, Sameer, is the first name of her former husband, Sameer Khera.

claims as in the Santa Clara action. In December 2017, Madhu sued Moreno and many others in federal court. (See pt. I.D., *post*.)

In September 2020, Moreno filed a motion to have Madhu declared a vexatious litigant pursuant to California's vexatious litigant statute (§§ 391–391.7). Madhu opposed the motion. There were multiple continuances, and the parties submitted additional papers, including supplemental briefs. On April 21, 2021, the trial court issued a tentative ruling stating it would grant the motion. Neither Madhu nor Moreno contested the tentative ruling or appeared at the hearing on April 22, 2021. The tentative ruling became the order of the court.

The trial court found Madhu was a vexatious litigant and ordered her to post security of $250,000 within 30 days of the date of the service of that order. The trial court stayed the action until proof of such security had been furnished. The trial court ordered that if a security was not posted within 30 days, the case would be dismissed by the court upon ex parte application by Moreno. On April 30, 2021, Moreno filed and served a notice of entry of the order.

*Dismissal and Appeal*

On June 24, 2021, the trial court filed an order granting Moreno's ex parte application to dismiss the action against them pursuant to section 391.4 on the ground Madhu had failed to post the required security. On July 2, 2021, Moreno filed and served a notice of entry of the order. Madhu filed a timely notice of appeal.

In August 2024, more than three years after her notice of appeal, Madhu filed her opening brief, which with this court's permission, contained approximately 132,881 words and 396 pages. In September 2024, Moreno filed a respondent's brief containing less than 14,000 words. In February 2025, Madhu filed an appellant's reply brief containing approximately 94,089 words and 316 pages.

On June 2, 2025, this court filed Madhu's motion to add three exhibits. The motion asserts that Madhu received communications from her former husband that

unequivocally establish he admitted his guilt related to division of property, the legal actions initiated by her were not vexatious, and the defendants have been dishonest in each and every court. The communications relate to a safe deposit box and bank account, rental property located in Hosur in southern India, and two DLF properties located in New Dehli. Madhu argues that, at a minimum, the documents show her former husband is now admitting the property was not provided to her and shows the litigation to secure these properties was not meritless.[2]

## DISCUSSION

### I. FINDING PLAINTIFF WAS A VEXATIOUS LITIGANT

#### A. Basic Legal Principles

California's vexatious litigant statute was designed to curb the misuse of the court system by the persistent and obsessive litigant who repeatedly files groundless actions and whose conduct causes serious financial results to the unfortunate objects of the litigant's attacks and not only places an unreasonable burden on the courts but also prejudices other parties waiting their turn before the courts. (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169; *Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406 (*Garcia*).) The statutory scheme "provides a 'means of moderating a vexatious litigant's tendency to engage in meritless litigation.' " (*Garcia*, at p. 406.)

To be declared a vexatious litigant, a party must come within one of the four definitions set forth in section 391, subdivision (b). As relevant here, section 391, subdivision (b)(1) defines a vexatious litigant as a person who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria

---

**2** We deny the motion. The appellate record may be augmented only with documents that were filed or lodged with the superior court. (Cal. Rules of Court, rule 8.155(a)(1)(A); see *People ex rel. Schlesinger v. Sachs* (2023) 97 Cal.App.5th 800, 812, fn. 5.) The motion does not contend the documents were before the trial court when it made its order, but states the documents were not available at trial or earlier in the appellate process.

persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person[.]"

For purposes of this provision, "litigation" means any civil action or proceeding, "commenced, maintained or pending in any state or federal court" (§ 391, subd. (a)), and it includes any appeal or writ proceeding. (*Garcia*, *supra*, 231 Cal.App.4th at p. 406; *McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1216, overruled on other grounds by *John v. Superior Court* (2016) 63 Cal.4th 91.) Consequently, separate appeals and writ petitions from multiple orders within the same case that are finally determined adversely to the person qualify as a "litigation" for purposes of the vexatious litigant statute. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1005-1007 [wife declared vexatious litigant under section 391, subdivision (b)(1) based on unsuccessful writ petitions and appeals taken from various orders in marital dissolution action].)

A litigation is " 'finally determined adversely' to the litigant under section 391 if they do not win the action or proceeding they began—including appeals they have voluntarily dismissed and those involuntarily dismissed for procedural defects—and the 'avenues for direct review (appeal) have been exhausted or the time for appeal has expired.' " (*Karnazes v. The Lauriedale Homeowners Assn.* (2023) 96 Cal.App.5th 275, 280; see *Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1173-1174 [appeal dismissed as untimely].)

B.     Issues of Statutory Interpretation

Madhu's arguments for reversal raise issues of statutory interpretation that must be resolved before we apply the statutory provisions to the facts of this case. The interpretation of a statute presents a question of law subject to our independent review. (*Davis Boat Manufacturing-Nordic, Inc. v. Smith* (2023) 95 Cal.App.5th 660, 672 [the interpretation and application of a statute are questions of law; appellate courts are not

bound by the trial judge's interpretation but decide the questions anew].) When ascertaining the meaning of a statute, we first examine the words, giving them their usual, ordinary meaning. (*Id*. at pp. 672–673, 674.)

Madhu contends that none of the cases have been *finally* determined adversely to her because there must be a final judgment that resolves all issues in dispute and settles the parties' rights with respect to those issues on the merits. This interpretation of the statutory term "finally determined" (§ 391, subd. (b)(1)) is not supported by a citation to authority and is contrary to existing case law. "A litigation is finally determined adversely to a plaintiff if he does not win the action or proceeding he began, including cases that are voluntarily dismissed by a plaintiff." (*Garcia*, *supra*, 231 Cal.App.4th at p. 406; accord, *Karnazes v. The Lauriedale Homeowners Assn.*, *supra*, 96 Cal.App.5th at p. 280.) "A particular litigation is finally determined when avenues for direct review (appeal) have been exhausted or the time for appeal has expired." (*Garcia*, *supra*, at p. 407, fn. 5.) We conclude this definition of "finally determined" applies in this appeal.

Madhu separately argues the statutory phrase "finally determined adversely to" her (§ 391, subd. (b)(1)(i)) should not be construed to include dismissals not based on the merits; outcomes based on fraud, bribery, bias, destruction of evidence, or extrinsic fraud by the opposing party; or orders that are void as a matter of law due to statutory violations or judicial misconduct. Again, this interpretation is not supported by authority and is contrary to how the phrase "finally determined adversely to" has been construed in the case law. Besides being contrary to established precedent, Madhu's statutory interpretation is not reasonable because it would require superior and appellate courts considering a motion to declare a person a vexatious litigant to reevaluate the outcome of every case the litigation that serves as the basis for the motion. Imposing such a monumental task to resolve a vexatious litigant motion would undermine basic principles that determine the finality of an order, judgment, or appellate decision. For example, an appellate court decision is final for all purposes when the time for Supreme Court review

6.

has expired and the remittitur has issued. (Cal. Rules of Court, rules 8.272 [remittitur], 8.264 [finality of Court of Appeal decision].) Applying this approach to finality in the context of a motion to declare someone a vexatious litigant is consistent with the statute's purpose of lessening the burden vexatious litigants impose on the judicial system. Furthermore, the approach taken under the prevailing definition of "finally determined adversely to" provides a bright line that is easily applied to information that is part of the public record.

In comparison, Madhu's statutory interpretation would free self-represented litigants from the consequences of filing procedurally defective appeals, such as untimely appeals and appeals from nonappealable orders. We have located no authority suggesting these specific ways to waste judicial resources should fall outside the scope of the vexatious litigant statute—that is, should not count as litigations finally determined adversely to a litigant.

### C. Final, Adverse Litigations

The order declaring Madhu a vexatious litigant was filed in June 2021. Therefore, we consider litigations finally determined against her during the seven-year period from July 2014 through June 2021.

**One: F070938 (2018).** Fresno County Superior Court case No. 05CEFS02946 was a child support proceeding where Madhu was represented by Moreno for a time. In that case, Madhu filed a motion to enforce child support arrearages from 2003 through 2012. In December 2014, after a hearing, the court denied the motion. Madhu, representing herself, filed an appeal. In April 2018, this court affirmed the trial court's order denying Madhu's motion. (*In re Marriage of Khera & Sameer* (Apr. 12, 2018, F070938) [nonpub. opn.].) Remittitur was issued in June 2018, after the Supreme Court denied Madhu's petition for review.

7.

**Two:  F073332 (2016)**.  Madhu also filed a motion to compel and request for production in the Fresno child support proceeding.  The trial court denied the motion in January 2016.  Madhu appealed.  In August 2016, this court filed an order dismissing the appeal because it was taken from a nonappealable order.  Remittitur was issued in October 2016.

**Three: F078390 (2018)**.  In November 2018, Madhu filed a petition for writ of mandate with this court seeking to overturn two orders filed in the Fresno child support case and stay the trial court proceedings.  We summarily denied the petition in December 2018.

**Four:  F071888 (2019)**.  In the Fresno case underlying this appeal, Madhu also sued her ex-husband's lawyers, alleging they aided and abetted ex-husband's illegal activity during the marital dissolution and child support proceedings.  The lawyers filed and won anti-SLAPP motions.  Madhu appealed those orders, and this court affirmed the orders in favor of her ex-husband's lawyers.  (*Sameer v. Benett* (Jan. 11, 2019, F071888) [nonpub. opn.].)  Remittitur was issued in March 2019, after the Supreme Court denied Madhu's petition for review.

**Five:  F073777 (2020)**.  In Fresno County Superior Court case No. 14CECG03660, Madhu sued her ex-husband for various wrongs allegedly committed during the marital dissolution and child support proceedings.  The trial court granted ex-husband's anti-SLAPP motion and attorney fees motion and denied Madhu's motions for relief under Code of Civil Procedure section 473, subdivision (b).  Madhu appealed.  We dismissed as untimely the appeal from the orders granting the anti-SLAPP motion and attorney fees motion and affirmed the other orders.  (*Sameer v. Khera* (Feb. 7, 2020, F073777) [nonpub. opn.].)  Remittitur was issued in May 2020, after the Supreme Court denied Madhu's petition for review.

We conclude that each of the foregoing five matters[3] constitute a "litigation" that was "finally determined adversely to" Madhu. (§ 391, subd. (b)(1); see *Garcia*, *supra*, 231 Cal.App.4th at p. 407, fn. 5.) Madhu did not win any of the four appeals or the writ proceeding. These losses and the facts establishing the outcomes are final are not subject to an objectively reasonable dispute as those facts are a matter of public record and are included in the appellate record. To reiterate, the various indirect (i.e., collateral) attacks raised by Madhu in this appeal are not a legally recognized way to show an appellate decision is not final for purposes of the vexatious litigant statute. (See pt. I.B., *ante*.)

     D.     <u>Federal Court Actions</u>

To demonstrate more than five litigations have been adversely decided against Madhu, we describe two federal lawsuits pursued by Madhu all the way to the United States Supreme Court. The federal appeals have been "finally determined adversely to" Madhu for purposes of section 391, subdivision (b)(1)(i) because the avenue for direct review (appeal) was exhausted when the United States Supreme Court denied Madhu's petitions for writ of certiorari. (See *Karnazes v. The Lauriedale Homeowners Assn.*, *supra*, 96 Cal.App.5th at p. 280.)

     *1.     Action Against Moreno and Others*

In December 2017, Madhu filed another complaint against Moreno and included many other defendants. (See *Sameer v. Khera* (E.D.Cal. Aug. 6, 2018, No. 1:17-CV-01748 DAD EPG) [2018 U.S. Dist. Lexis 132021; 2018 WL 3753023] [order denying request for temporary restraining order].) She alleged "a massive conspiracy involving more than 30 defendants, including her ex-husband, his current wife, two corporations owned by these individuals, all attorneys who represented her in the divorce proceedings,

---

[3]     The five cases are only a partial list of this court's opinions and orders that were determined adversely to Madhu. Other matters assigned case Nos. F072323, F074544, and F078293 were initiated by Madhu in this court. Our partial list also excludes the adverse decisions in the actions initiated in Santa Clara County.

all attorneys who represented [her ex-husband] in the divorce proceedings, two Santa Clara County judges (one of whom is now a United States District Judge), a Fresno County Superior Court Judge, a Fresno County Superior Court Commissioner, the California Department of Child Support Services, a Certified Public Accountant, and a vocational assessment professional." (*Sameer v. Khera* (E.D.Cal. Apr. 18, 2019, No. 1:17-CV-01748 DAD EPG) [2019 U.S. Dist. Lexis 66537 at *3-*4; 2019 WL 1746053 at *1].)  Her second amended complaint in the action alleged 15 causes of action, including fraud, negligence, breach of fiduciary duty, intentional and negligent infliction of emotional distress, obstruction of justice, defamation, aiding and abetting, civil conspiracy, and a RICO conspiracy.  (*Sameer v. Khera* (E.D.Cal. Dec. 5, 2018, No. 1:17-CV-01748 DAD EPG) [2018 U.S. Dist. Lexis 205650 at *5; 2018 WL 6338729 at *1].)  The district court determined Madhu's allegations were fanciful and concluded "the only appropriate response is to dismiss the case with prejudice, as federal courts lack subject-matter jurisdiction over actions such as this." (2018 U.S. Dist. Lexis 205650 at *7–*8; 2018 WL 6338729 at 2*.)

Madhu appealed to the United States Court of Appeals for the Ninth Circuit, which dismissed the appeal as frivolous.  (*Sameer v. Khera* (9th Cir. Aug. 27, 2019, No. 19-15011) [2019 WL 7425404].)  In October 2020, the United States Supreme Court denied Madhu's petition for writ of certiorari.  (*Sameer v. Khera* (2020) 141 S.Ct. 299, 208 L.Ed.2d 51.)  In December 2020, it denied her petition for rehearing.  (*Sameer v. Khera* (2020) 141 S.Ct. 945, 208 L.Ed.2d 481.)

### 2. *Actions Against Movers*

Madhu sued her movers for failing to deliver her personal possessions from Fresno to her new residence in New Zealand.  The trial court dismissed her third amended complaint with prejudice because it failed to comply with the court's earlier orders and

applicable rules of pleading. (*Sameer v. Right Moves 4 U* (E.D. Cal. May 22, 2018, No. 1:17-CV-886 AWI EPG) [2018 WL 2318331 at \*5].)

Madhu appealed the dismissal to the Ninth Circuit. In December 2019, the court affirmed the district court's dismissal of the lawsuit and denied Madhu's requests for judicial notice of documents, which it determined were irrelevant to the issues on appeal. (*Sameer v. The Right Move 4 U* (9th Cir. 2019) 787 Fed.Appx. 473, [2019 U.S. App. Lexis 36917; 2019 WL 6821136].) In January 2021, the United States Supreme Court denied Madhu's petition for writ of certiorari. (*Sameer v. The Right Move 4 U* (2021) 141 S.Ct. 1089, 208 L.Ed.2d 542.)

These two losses in the district court and subsequent losses on appeal count as at least four more litigations finally and adversely decided against Madhu.

E.     Conclusion

The outcomes of the foregoing appeals and writ proceedings in this court and the two federal lawsuits and related appeals are not reasonably disputed. These outcomes constitute substantial evidence supporting the trial court's finding that more than five litigations had been "finally determined adversely to [Madhu]" in the preceding seven years. (§ 391, subd. (b)(1); *Garcia*, *supra*, 231 Cal.App.4th at p. 406 [litigation includes any appeal or writ proceeding].) Accordingly, the trial court did not err when it found Madhu met the definition of a vexatious litigant contained in section 391, subdivision (b)(1)(i).

As an alternative to our determination that the trial court findings are supported by substantial evidence, we have conducted an independent review of the relevant record. Madhu contends we must undertake an independent analysis of her claims of judicial misconduct, procedural error, structural error, judicial bias, and constitutional violations. Our independent analysis gives no deference to the trial court's decision and, as a result, is not affected by any of the alleged misconduct and errors of the trial court. Our

11.

independent review of the relevant record leads us to conclude the decisions described in parts I.C. and I.D. establish Madhu is a vexatious litigant under the definition in section 391, subdivision (b)(1)(i). Those decisions were rendered in a litigation, were adverse to Madhu, and are final.

The foregoing sets forth the reasons for our determination that Madhu qualifies as a vexatious litigant and fulfills our constitutional responsibility of providing a decision "in writing with reasons stated." (Cal. Const., art. VI, § 14.) Thus, we need not address whether Madhu also qualified as a vexatious litigant under subdivisions (b)(2) and (b)(3) of section 391. Next, we directly address claims of error raised by Madhu's appellate briefing.

F.     Claims of Error

Madhu contends the trial court's refusal to take judicial notice of documents in her multivolume compendium was prejudicial error. We conclude no prejudice could have resulted because it cannot be reasonably disputed that the record establishes more than five litigations were finally and adversely decided against Madhu during the relevant seven-year period.

Madhu contends Moreno is estopped by the doctrines of res judicata and issue preclusion because the issues of final orders, lack of jurisdiction, delays, and vexatiousness had already been raised by Moreno in a motion to sever, a motion to transfer, and an anti-SLAPP motion, which was denied and Moreno withdrew the appeal of that denial. These arguments are not objectively reasonable under the established principles that define the doctrines of res judicata and issue preclusion. When the trial court considered the motion to declare Madhu a vexatious litigant, there was no final judgment in this action—the case in which the motion to sever, motion to transfer, and Moreno's anti-SLAPP motion were pursued. (See *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [a final judgment is required to apply res judicata].) Also, the

12.

issues resolved in granting the section 391 motion were not identical to the issues raised in the prior motions.  (See *People v. Barragan* (2004) 32 Cal.4th 236, 253.)  In the absence of a final judgment addressing identical issues, the doctrines do not apply.

Madhu asserts the trial court's misrepresentations, lies, repeated errors, omissions, and mistakes must be construed to be willful misconduct that deprived her of her constitutional rights.  We reject this claim because the trial court did not commit errors or mistakes in finding Madhu was a vexatious litigant pursuant to section 391, subdivision (b)(1)(i).  Had the trial court determined Madhu was not a vexatious litigant, the record before us would have required a reversal with directions to grant Moreno's motion.

Madhu contends the trial court misapplied the law by counting a voluntary dismissal as a final determination of a litigation.  This contention does not establish prejudicial error because the requirement of five or more final, adverse determinations is satisfied without counting any of Madhu's voluntary dismissals.

Madhu contends the trial court erred by not analyzing whether judgments entered in 2008 were void or enforceable.  Madhu cites no legal authority to support this particular claim of error.  It appears the contention is presented to indirectly challenge the outcome in cases finally decided after the 2008 judgments, some of which might be among the litigations relied upon in parts I.C., *ante*.  In the absence of authority to the contrary, we again conclude such an *indirect* challenge cannot be used to show that some of the decisions relied upon to establish Madhu is a vexatious litigant were not finally and adversely decided against her.  (See *Garcia*, *supra*, 231 Cal.App.4th at p. 407, fn. 5 [a litigation "is finally determined when avenues for direct review (appeal) have been exhausted or the time for appeal has expired"].)

Madhu contends the trial court made erroneous or false statements of fact by finding Madhu (1) engaged in relitigation by filing four lawsuits against Moreno and (2) allowed one case to remain unprosecuted for five years.  Relitigation and failures to prosecute are considerations relevant to other definitions of a vexatious litigant, but

irrelevant to the application of subdivision (b)(1)(i) of section 391. Therefore, these contentions do not undermine our conclusions that Madhu qualifies as a vexatious litigant under subdivision (b)(1)(i) of section 391.

Madhu makes several other contentions about factual misstatements made by the trial court in its decision relating to Madhu's conspiracy claims and the statute of limitations defense. Those contentions also address facts irrelevant to determining whether Madhu qualifies as a vexatious litigant under subdivision (b)(1) of section 391 and, thus, do not establish that, in the absence of the alleged misstatements, there is a reasonable probability that Madhu would not have been declared a vexatious litigant. (See § 475 [reversal is appropriate only if it appears from the record that a different result would have been probable if such error had not occurred]; see generally, *People v. Watson* (1956) 46 Cal.2d 818, 836 [standard for prejudicial error].)

Similarly, Madhu's argument about the meaning and application of the word "unjustifiably" used in subdivision (b)(1)(ii) of section 391 is not relevant to our determination that she is a vexatious litigant because we have not relied on that prong of the statutory definition.

Madhu contends the trial court erred in stating Madhu had engaged in frivolous tactics, tactics solely intended to cause unnecessary delays, or other inappropriate use of judicial processes. The use of such tactics is not the basis for our determination that Madhu is a vexatious litigant under section 391, subdivision (b)(1). As a result, these contentions do not establish a prejudicial error.

At pages 82 through 91 of her opening brief, Madhu asserts the trial court engaged in various types of conduct that create cause for disciplinary action and are grounds for reversal. The grounds include substantive and procedural errors, orders in excess of the court's jurisdiction, and orders abusing the court's discretion. Madhu also contends the clerk's filing defect, judicial misconduct and a continued conspiracy, and the judge's bias and prejudice amount to a structural error that requires reversal. We reject these

14.

arguments because the record clearly establishes Madhu is a vexatious litigant under section 391, subdivision (b)(1)(i) and, given the clarity of the record, there is no basis for inferring the court's order granting Moreno's motion was the result of prejudice, bias, or a misinterpretation of section 391, subdivision (b)(1). As stated earlier, the appellate record establishes it would have been reversible error for the trial court to deny the motion.

Lastly, we note Madhu's opening brief stated: "The factual disputes are the province of the jury, and the dismissal must be reversed to establish important facts, especially since there has been no discovery. Plaintiff's allegations are deemed to be true[.]" (Boldface and underscore omitted.) We disagree. First, motions under section 391 are decided by trial court judges, not a jury. (See §§ 391.1 [motion for order], 391.3, subd. (a) [the court, after hearing the evidence upon the motion, determines whether the plaintiff is a vexatious litigant]; *Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 786 ["court performs an evaluative function in the section 391.1 hearing"].) Second, Madhu has presented no authority for the principle that the allegations of a party opposing a motion to declare that person a vexatious litigant must be deemed true. We conclude the trial court determines the facts of the case by making express and implied findings after hearing the evidence, not by presuming the plaintiff's allegations are true. (See generally, *In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 622 [vexatious litigant order supported by substantial evidence].) Third, the facts establishing the litigations described in parts I.C. and I.D., *ante*, were finally and adversely determined against Madhu are not subject to an objectively reasonable dispute; the relevant information is a matter of public record and is included in the appellate record.

15.

II.     ORDER REQUIRING MADHU TO FURNISH SECURITY

The vexatious litigant statute provides two remedies.  In pending litigation, such as this case, " 'the defendant may move for an order requiring the plaintiff to furnish security on the ground the plaintiff is a vexatious litigant and has no reasonable probability of prevailing against the moving defendant.' [Citation.]  If the court finds in the defendant's favor on these points, it orders the plaintiff to furnish security in an amount fixed by the court.  [Citation.]  Failure to provide the security is grounds for dismissal." (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1345.)  The security is intended to compensate the defendant for its reasonable costs and attorney fees incurred in defending the suit.  (*Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 49.)[4]

A.      Reasonableness of Amount

Here we consider whether Madhu has affirmatively demonstrated the trial court erred in requiring her to furnish security in the amount of $250,000.  Our consideration of this issue begins with a review of the headings in Madhu's opening brief because of the requirement that the brief "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).)  "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179; accord, *Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 547; see *State Water*

---

[4]     The second remedy is not relevant to this appeal; it prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge.  The "prefiling requirement 'does not deny the vexatious litigant access to the courts, but operates solely to preclude the initiation of meritless lawsuits and their attendant expenditures of time and costs.' " (*In re Marriage of Deal, supra,* 45 Cal.App.5th at p. 618.)  For example, in case Nos. F086762, F084120, and F083908, this court has denied Madhu's applications, as a person declared a vexatious litigant, for permission to proceed with two writ petitions and one appeal.

*Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 835–836 [appellants forfeited challenge to trial court's ruling on a particular issue by failing to address it in their opening brief].)

The only heading we have located that pertains to the amount of security required makes the general assertion that the trial court's order constituted an abuse of discretion. Under this heading, Madhu argues the $250,000 in security was unreasonably and outrageously high and was unjustified. Madhu refers to the definition in subdivision (c) of section 391, which states: " 'Security' means an undertaking to assure payment … of the [opposing] party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted … or maintained … by a vexatious litigant."

Madhu argues that Moreno charged her $102,000 for representing her over a period of four years and in a trial that took 24 half days. Based on this amount, Madhu contends there are no grounds for a 15-day trial that costs $250,000. Madhu also asserts the security was set high intentionally, with the goal to "prevent apprehension, trial and punishment of Davila and his gang." She also argues the trial court failed to acknowledge her emotional distress cause of action would not require a case within a case.

The trial court's rationale for requiring $250,000 in security was stated as follows: "The court approves of defendants' request that security be fixed in the amount of $250,000. Defendants made a sufficient showing of the reasonably anticipated costs to take this matter to trial, factoring in the likelihood that [Madhu] will refuse to cooperate with discovery or the litigation process, and the excessive amount of work and motion practice this will entail."

Moreno argues that substantial evidence supports the trial court's finding that security should be fixed at $250,000. Moreno asserts an attorney's declaration can be

substantial evidence supporting the amount of the security and cites the declaration of Geoffrey T. MacBride, an attorney who represents Moreno.

First, we conclude a trial court's determination of the amount of security is reviewed under the substantial evidence standard. (See *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1588, overruled on other grounds in *Moran*, *supra*, 40 Cal.4th 780, 785 & fn. 7.) Second, we conclude the testimony of a single witness, even a party in the case, may constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) Therefore, the declaration of MacBride might provide sufficient evidentiary support for setting the amount of security at $250,000. Third, based on our review of the declaration, we conclude it provides sufficient detail and reasonably supported estimates to constitute substantial evidence. Our evaluation of the sufficiency of the evidence begins by repeating the following:

> "Montebello's wearisome 84-page argument about the facts reminds us of the oft quoted statement in civil appeals: [¶] 'Andre Gide once observed: "Everything has been said already; but as no one listens, we must always begin again." With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is ... substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen.' " (*Montebello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 21.)

MacBride's declaration lists 10 categories of tasks involving discovery and estimates the amount of associate hours and partner hours that will be spent on each task. As quoted earlier, Madhu's opening brief argued important factual disputes justified reversing the dismissal, "especially since there has been no discovery." Madhu's argument, her general approach to this lawsuit, and theories of liability pursued convince us that the estimates for discovery in MacBride's declaration are reasonable. Furthermore, we conclude MacBride's estimates of the amount of time that will be

18.

incurred in motions, case management conferences, pretrial, trial, and posttrial matters are reasonable in the circumstances of this case and, thus, constitute substantial evidence.

To summarize, we conclude substantial evidence supports the trial court's finding that a reasonable amount of security is $250,000. As a result, the trial court's order cannot be reversed on the ground the amount of security required was unreasonable.

### B. Probability of Prevailing

Section 391.3. subdivision (a) provides that before a court issues an order directing the plaintiff to furnish security, it must determine "that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant." Madhu's opening brief asserts the question whether there is a high probability of her prevailing in this lawsuit against Moreno is deferred for later and this "court must order a supplemental brief." At page 393 of her opening brief, Madhu states the section addressing her high probability of prevailing "was removed to accommodate the 50,000 word limit"[5] and the removed section contained her legal arguments for the probability of prevailing on the causes of action for (1) malpractice, (2) fraud, (3) emotional distress, (4) defamation, (5) malicious prosecution, (6) abuse of process, (7) unjust enrichment, and (8) conspiracy, which includes a general civil conspiracy, a fraud-upon-the-court conspiracy, a conspiracy to deprive her of her civil rights under color of law, and a conspiracy involving RICO violations.

By choosing to defer her briefing of the issue, Madhu has failed to meet her burden of affirmatively demonstrating the trial court made a prejudicial error when it determined she did not have a reasonable probability of prevailing on her claims against Moreno. (See *Herrera v. Doctors Medical Center of Modesto*, *supra*, 67 Cal.App.5th at p. 546; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

---

[5] This court's August 6, 2024 order granted Madhu permission to file an opening brief not to exceed 132,881 words.

19.

**DISPOSITION**

The superior court's order granting defendants' application to dismiss the action against them pursuant to California Code of Civil Procedure section 391.4 is affirmed. Defendants shall recover their costs on appeal.

Appellant's "Motion to Add 3 EXHIBITS" filed on June 2, 2025, is denied.


                                                                FRANSON, J.

WE CONCUR:


DETJEN, Acting P. J.


DE SANTOS, J.